IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| CLYDE MINKS, III, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 20-CV-05063-SW-WBG |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**ORDER AND OPINION REVERSING COMMISSIONER'S FINAL DECISION DENYING BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS**

Pending is Plaintiff Clyde Minks's appeal of the Commissioner of Social Security's final decision denying his application for supplemental security income. After carefully reviewing the record and the parties' arguments, the Commissioner's decision is **REVERSED**, and the matter is **REMANDED** for further proceedings.

I.     BACKGROUND

Plaintiff was born in 1975 and has a limited education.[2] R. at 20, 58, 76, 132, 153. He previously worked as a construction worker. R. at 20, 71-72. In May 2018, Plaintiff protectively applied for supplemental security income, alleging a disability onset date of January 4, 2016. R. at 11, 132-38. In July 2018, his application was denied. R. at 11, 101-04. Plaintiff then requested a hearing before an administrative law judge ("ALJ"). R. at 105-07.

On July 1, 2019, ALJ James Gillet held a hearing during which Plaintiff and a vocational expert testified. R. at 56-75. Thereafter, on August 30, 2019, the ALJ issued a decision finding

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, is automatically substituted as Defendant in this suit.

[2] Plaintiff completed the ninth grade but subsequently left school. R. at 153.

Plaintiff is not disabled. R. at 11-22. He concluded Plaintiff's severe impairments are cervical degenerative disc disease and compression fracture secondary to traumatic injury, status post fusion and hardware implantation; upper extremity radiculopathy; low back pain; and major depressive disorder. R. at 13. He determined Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a) with the following additional limitations:

> [L]ifting and carrying is limited to 5 pounds frequently and 10 pounds occasionally; standing and walking is limited to two hours in an eight-hour workday and 10 minutes at any one time; sitting is limited to six hours in an eight-hour workday and one hour at any one time; after one hour the individual requires the ability to stand and stretch not more than two minutes at the workstation and can remain on task while stretching; while seated this individual requires the ability to shift at will from side to side and can remain on task while shifting; bending, twisting, turning, stooping and squatting are limited to 15% of the workday; no kneeling or crawling; no climbing ropes, ladders or scaffolds; climbing ramps or stairs is limited to 15% of the workday; reaching is limited to frequent except reaching over the shoulders is limited to 15% of the workday; no use of air or vibrating tools; no work on vibrating surfaces, under hazardous conditions or at unprotected heights; all work should be simple, routine and repetitive in task, and simple decision-making; no interaction with the public; and no more than occasional interaction with co-workers and supervisors.

R. at 16.

Based on his review of the record, his RFC determination, and the testimony at the hearing, the ALJ concluded Plaintiff could work as a document preparer, touch up screener, and table worker, and therefore, is not disabled. R. at 21-22. Plaintiff unsuccessfully appealed the ALJ's decision to the Appeals Council. R. at 1-5, 130-31. He now appeals to this Court. Doc. 3.

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Turpin v. Colvin,* 750 F.3d 989, 992-93 (8th Cir. 2014). The Court must affirm the Commissioner's decision if it is supported by substantial evidence in the record as

a whole. *Igo v. Colvin,* 839 F.3d 724, 728 (8th Cir. 2016). The threshold for such evidentiary sufficiency is not high. *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (citation omitted). "As long as substantial evidence supports the ALJ's decision, [a reviewing court] may not reverse because substantial evidence also 'would have supported a contrary outcome, or because [the court] would have decided the case differently.'" *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (quoting *Andrews v. Collins*, 791 F.3d 923, 928 (8th Cir. 2015)).

In evaluating for substantial evidence, a court must consider evidence that supports the Commissioner's decision as well as evidence that detracts from it. *Anderson v. Astrue,* 696 F.3d 790, 793 (8th Cir. 2015) (citation omitted). If, after reviewing the entire record, it is possible to draw two inconsistent positions, and the Commissioner has adopted one of those positions, the Court must affirm. *See id.*

### III. DISCUSSION

Plaintiff's sole issue in this appeal is whether the ALJ's RFC is supported by substantial evidence. Doc. 14 at 8-17. The ALJ found Plaintiff could perform sedentary work with frequent reaching, except reaching over the shoulders should be limited to 15% of the workday. R. at 16. Plaintiff contends this finding was made "despite the only medical evidence of record indicating no reaching in all directions." Doc. 14 at 1. The Commissioner maintains the ALJ's RFC, including the reaching limitation, is supported by at least some medical evidence in the record. Doc. 19 at 6-15.

One's RFC is the "most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1). The ALJ must base the RFC on "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his

3

limitations." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Strongson v. Barnhart,* 361 F.3d 1066, 1070 (8th Cir. 2004) and *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Because the RFC is a medical question, "an ALJ's assessment of it must be supported by some medical evidence of [Plaintiff's] ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Id*.

In the written decision, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion." Soc. Sec. Admin., Policy Interpretation Ruling Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id*. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*.

**A.      Plaintiff's Medical Records**[3]

In January 2016, Plaintiff was transferred to Barnes Jewish Hospital from Joplin after suffering severe trauma to the back of his neck.[4] R. at 332-470. He was diagnosed with a central cord syndrome (after direct trauma) and severe degenerative disc disease at C4-C5 and C6-C7 with loss of cervical lordosis. R. at 334, 336, 338, 340, 344, 346. Plaintiff advised physicians he had bilateral upper extremity weakness and a burning sensation in both upper extremities. R. at 332.

---

[3] Supplemental Security Income is payable beginning with the month after a claimant's application is filed. 20 C.F.R. § 416.335. Thus, the relevant period of review for Plaintiff's claim is from May 21, 2018, his protective filing date, through August 30, 2019, the date of the ALJ's decision.

[4] In 2016, Plaintiff was assisting a friend with unloading a door from a stack of doors loaded onto a short flatbed truck. R. at 224. He was injured when one of the doors fell from the stack and struck him on the head. R. at 224.

4

Case 3:20-cv-05063-WBG   Document 26   Filed 03/24/22   Page 4 of 10

Further, imaging studies of Plaintiff's spine showed "significant stenosis of [his] spinal canal." R. at 339, 344.

At the direction of hospital physicians, Plaintiff reported to Brian Ipsen, M.D., for a follow-up consultation in April 2016. R. at 310. At that time, Plaintiff reported mild neck pain with bilateral shoulder and arm pain with numbness and tingling. *Id*. He also reported numbness in his hands and fingers. *Id*. Dr. Ipsen recommended surgery. R. at 312. On April 25, 2016, Plaintiff underwent surgical procedures including an anterior cervical discectomy and fusion of C4 to T1, a corpectomy at C5 to C6, and a posterior cervical fusion at C4 to T2. R. at 301-05. After surgery, Plaintiff continued to report pain, tenderness, decreased range of motion, and muscle spasms. *See, e.g.*, R. at 224, 246-49, 306-07, 311, 315-16, 319. In November 2016, a CT showed cervical fusion with disc herniation and spinal canal stenosis with severe foraminal stenosis on the left side. R. at 328. In November 2017, an x-ray of Plaintiff's neck revealed advanced adjacent level disc degeneration at C3-C4 with "angular kyphosis." R. at 203-05.

During the relevant period of review, there are few medical records. *See* R. at 263-71, 291, 293-99. In May 2018, Plaintiff reported having chronic neck pain but was found to have normal musculoskeletal inspection, range of motion, upper extremity strength, sensations, motor strength, and deep tendon reflexes. R. at 268-69. In June 2018, Plaintiff presented with chronic neck and low back pain and cervical radiculopathies. R. at 263-65. He described his pain as "unbearable." R. at 263. The physician's examination notes revealed normal musculoskeletal inspection, range of motion, upper extremity strength, sensations, motor strength, and deep tendon reflexes. R. at 265. In June 2018, Plaintiff also complained of right knee pain; however, an x-ray of his knee was "unremarkable." R. at 263, 299. And, in August 2018, Plaintiff was seen at an urgent care facility for abdominal pain. R. at 293-97. None of these records, however, indicate Plaintiff's reaching ability, including overhead, was ever evaluated by the examining physicians.

B.   **Medical Opinion Evidence**

    **(1)**   **Ted Lennard, M.D.**

In March 2018, Ted Lennard, M.D., performed an independent medical evaluation for Plaintiff's worker's compensation claim.[5] R. at 224-31. Plaintiff complained of "constant aching pain in his mid to left" side of his neck and "constant numbness and tingling in his bilateral upper extremities." R. at 224. Dr. Lennard observed there was no tenderness, swelling or instability in Plaintiff's shoulders. R. at 227. He also determined Plaintiff had full range of motion in both shoulders but experienced "pain in the neck with motion" in both shoulders. *Id*. Dr. Lennard found Plaintiff had full range of motion without pain in his lumbar spine, full range of motion with "minimal pain" in his thoracic spine, and minimal motion with pain upon movement of his cervical spine. *Id*. Based on his examination and review of medical records, Dr. Lennard opined Plaintiff would require "indefinite and lifelong use of medication for his residual symptoms." R. at 231. He also stated Plaintiff should "avoid activities that require lifting, pushing, carrying, or pulling" more than five pounds, "use of the upper extremities in the overhead or reaching position, squatting, ladder climbing and professional driving." *Id*.

    **(2)**   **Kevin Threlkeld, M.D.**

In July 2018, a non-examining State Agency Consultant, Kevin Threlkeld, M.D. reviewed the available medical record and opined the record was "insufficient to establish a disabling impairment" at that time. R. at 79-80. Dr. Threlkeld noted the medical evidence "[did] not indicate a listing level impairment," and indicated "additional information [was] needed to evaluate this case." *Id*. Since Dr. Threlkeld's opinion, additional medical evidence was added to the record. *See* R. at 19, 76-82.

---

[5] Although not binding, an ALJ may consider an opinion that was part of a workers' compensation claim. *See Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000).

### (3) M. Bijpuria, M.D.

In March 2019, non-examining State Agency Consultant M. Bijpuria, M.D., reviewed the available medical record and opined that, in the "absence of longitudinal treatment, operative report, post operative follow up[,] clinical finding and current imaging evidence," the medical evidence is "insufficient to establish severity of medically determinably musculoskeletal impairment." R. at 221. Dr. Bijupria, whose opinion was based solely on review of the medical records, concluded a "complete musculoskeletal (orthopedic) evaluation from [an] acceptable source" including "documentation of specific symptoms, onset past and current treatment response, ADL, ROM spine and extremities in degrees, gait, grip, pinch, grasp dexterity, any evidence of motor weakness atrophy radicular neurological deficits, SLR, [and] need of assistive and brace" were needed. R. at 220-21.

### C. The ALJ's Consideration of the Medical Opinions

The ALJ found Dr. Lennard's opinion was unpersuasive. R. at 19-20. He noted the most recent medical evidence cited by Dr. Lennard predated his medical opinion by two years. R. at 19. In addition, the ALJ observed the objective medical evidence reflected "conservative, routine treatment," the record did not indicate "additional, more aggressive care was anticipated," and Plaintiff's subjective complaints were "inconsistent with his level of care." R. at 20. Further, the ALJ noted the record did not reflect any "additional, more aggressive care was anticipated." *Id*.

The ALJ also found Dr. Threlkeld's and Dr. Bijpuria's opinions to be unpersuasive. R. at 19. He acknowledged that both Dr. Threlkeld and Dr. Bijpuria are familiar with the Social Security rules and regulations regarding disability. *Id*. However, the ALJ pointed out that since the date of Dr. Threlkeld's opinion, additional evidence had been added to the record, and although that additional evidence "still fail[ed] to support the support the severity of symptoms and limitations alleged," it revealed diagnoses "by an acceptable medical source outlining [Plaintiff's] cervical

7

condition including a fracture, upper extremity radiculopathy, and low back pain, with the resulting symptoms and limitations therefrom." *Id*. Relating to Dr. Bijpuria's opinion, the ALJ found it did not identify Plaintiff's functional limitations or restrictions. *Id*. Furthermore, the ALJ noted Dr. Bijpuria's opinion did not assess Plaintiff's "work-related abilities on a function-by-function basis." *Id*. In addition, the opinion did not "address the cervical imaging which show[ed] abnormalities." *Id*.

**D.     The ALJ's RFC**

In support of his RFC determination, the ALJ noted imaging demonstrated "extensive postsurgical changes from C4 through T2 and C4 through T1; advanced adjacent level disc degeneration at C3-4 with kyphosis; and bilateral foraminal stenosis." R. at 17. He observed "[s]ome evidence reflects additional degenerative joint disease immediately above the fusion." *Id*. The ALJ found the imaging was "consistent with some abnormality of [Plaintiff's] cervical and thoracic spine," but there was no evidence of "significant nerve root impingement, severe stenosis, progressive neurological deficits, tumors or fractures to cause the severity of pain and disabling limitations as alleged by [Plaintiff]." R. at 17-18. The ALJ's decision addressed Plaintiff's neck and back tenderness, and positive straight leg raising tests, but also observed there was "no significant muscle atrophy, persistent paravertebral muscle spasm, significant motor loss, serious reflex abnormality, serious gait disturbance, or significantly reduced range of motion of the pain." R. at 18. Accordingly, the ALJ found Plaintiff could "perform work with the physical limitations" incorporated in the RFC. *Id*.

Specific to Plaintiff's ability to reach, the ALJ's RFC indicates Plaintiff could reach frequently "except reaching over the shoulders is limited to 15% of the workday." R. at 16. The medical evidence in the record, however, does not support such a limitation. In fact, the record reveals continuous reports of bilateral upper extremity numbness, tingling, weakness, and pain.

*See, e.g.*, R. at 246-47, 249, 264, 310, 315, 332, 339. Although most of this evidence predated the period of review, the ALJ cited only two records during the relevant timeframe to support his RFC: (1) a follow up appointment at a community health center related to mental health, and (2) a visit to an urgent care facility for abdominal pain. R. at 18 (citing R. at 265, 296).

Despite the limited medical record, the ALJ somehow found Plaintiff capable of frequently reaching and capable of reaching over the shoulders for 15% of the workday. The ALJ's failure to cite medical evidence supporting his finding that Plaintiff could frequently reach stems from his failure to develop the record. "[T]he ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden…." *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (quoting *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)). If the record "does not contain all the information" needed to determine whether a claimant is disabled, the ALJ may recontact a medical source, request additional existing evidence, order a consultative examination, or ask the claimant or others for more information. 20 C.F.R. § 416.920b(b)(2). However, the ALJ does not have to "seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

Here, Plaintiff's reaching ability is a crucial issue that is undeveloped in the current record. Because the ALJ's RFC indicated Plaintiff could frequently reach with a limitation of reaching over the shoulders to 15% of the workday, he should have cited some medical evidence to support such a capability. The ALJ's RFC is not supported by substantial evidence, and, accordingly, the Court must reverse the Commissioner's decision and remand this matter. Upon remand, the ALJ shall more fully develop the record with regard to Plaintiff's reaching capabilities and limitations.

## IV. CONCLUSION

For the foregoing reasons, the Court finds the substantial evidence in the record as a whole does not support the ALJ's decision. Accordingly, the Commissioner's decision is **REVERSED**, and the matter is **REMANDED** for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

DATE: March 24, 2022 /s/ W. Brian Gaddy
W. BRIAN GADDY
UNITED STATES MAGISTRATE JUDGE